IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


| | | |
|---|---|---|
| DELORES COMSTOCK as Special | * | |
| Administrator of the Estate of | * | |
| WILLIAM GUMBY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | No. 4:11CV000340 SWW |
| | * | |
| UPS GROUND FREIGHT INC. and | * | |
| ALLEN HOWARD, | * | |
| | * | |
| Defendants. | * | |

## Memorandum Opinion and Order

Before the Court is defendants' motion to show cause, request for dismissal, and request for hearing. The Court held a hearing on June 6, 2013, and after oral argument, granted defendants' motion to dismiss. The basis for the Court's ruling is set out below.

### Background

William Gumby was involved in a vehicle accident on or about February 4, 2011, in Lonoke County, Arkansas. He filed a complaint in state court on March 18, 2011, and it was removed the next day to federal court. Mr. Gumby alleged that Defendant Allen Howard, who was driving a double tractor-trailer, struck the pick-up truck Gumby was driving on the interstate highway. Mr. Gumby claimed Howard was negligent and that Howard's employer, Defendant United Parcel Service Ground Freight, Inc. ("UPS)", was liable under the doctrine of *respondeat superior*. Mr. Gumby later filed an amended complaint alleging negligent supervision and negligent training on the part of UPS. He also alleged UPS engaged in intentional, willful, and reckless conduct which contributed to the accident.

Mr. Gumby died on April 1, 2012, and his sister, Delores Comstock, was appointed as special administrator of Gumby's estate. She was substituted as party plaintiff, and the Court allowed her to file an

amended complaint, adding a wrongful death claim.  Plaintiff Comstock seeks compensatory and punitive

damages.  Defendants contend Gumby's physical and mental health prior to the accident was relevant as to

why the accident happened and the alleged resulting injuries. Defendants assert that Gumby, Comstock, and

certain medical providers bore some responsibility for his death.

 With these defenses set forth, defendants propounded written discovery on Gumby and later

Comstock. Defendants sought basic information, such as the identification of persons with knowledge of the

plaintiff's claims and defenses, Gumby's complete medical records and bills, and an itemization of the

damages claimed.  They also sought information about any expert witnesses plaintiff intended to call,

including each document examined, reviewed, created or relied on by the expert in reaching his or her

opinion.  On July 30, 2012, UPS filed a motion to compel, arguing that plaintiff failed to adequately respond

to its discovery requests, including a complete set of medical records and bills since the date of the accident

and identification of all persons having relevant knowledge.  Defendant UPS also complained plaintiff had

not provided Rule 26 expert disclosures and supporting documentation requested by defendants.

 On August 20, 2012, the Court held a hearing on UPS's motion to compel.  Plaintiff's attorney stated

she had provided defendants with all the medical records she had and that she would provide defendants with

expert reports that complied with the requirements of Rule 26.  Plaintiff's attorney also said she was trying

to retain a sleep apnea expert and agreed to provide all her discovery by August 31, 2012.  Plaintiff's attorney

repeated that  defendants had all the medical bills and medical records plaintiff had and that she did not plan

on getting any more.  During the hearing, the Court drew plaintiff's attention to defendants' contention that

pre-existing conditions caused Gumby's injuries and death and, in an attempt to clarify defendants' discovery

requests, the Court directed UPS to prepare new, specific requests for production relating to plaintiff's

damages claims and Gumby's prior medical records.  Plaintiff agreed to provide all of the requested discovery

covered by UPS's motion to compel, the new discovery requests the defendants would be propounding, and

Rule 26 compliant disclosures of her experts by September 28, 2012.

As discussed during the hearing and directed by the Court, UPS submitted its Third Set of Requests for Admission and Fourth Set of Requests for Production, and defendant Howard submitted his First Set of Interrogatories to plaintiff on August 31, 2012.   On September 24, 2012, plaintiff provided responses to defendants' August 2012 discovery requests.   On September 28, 2012, plaintiff provided her expert disclosures, supplemental responses to UPS's First Set of Interrogatories, and another supplemental response to UPS's First Set of Requests for Admission.

Defendants took the depositions of plaintiff's proposed experts and Gumby's son during December 2012.  Defendants also received over 3,000 pages of supplemental discovery documents from plaintiff in early December, many of which were duplicative of records already produced.  Defendants say the new records included approximately eighty-eight pages of bills from the hospital where Gumby died and several documents relating to events surrounding a trip Gumby made to Pennsylvania from which he was returning at the time of the subject accident.  The newly provided information showed that Gumby made two separate visits to hospitals just days before the accident and at least one of his family members was present; that he had a history of vision problems, dizziness/hallucinations/paranoia while driving and had specific instructions from health care providers since 2010, months prior to the subject accident, not to drive at night; that he had been taken by ambulance to an emergency room in Tennessee only hours before the subject accident; and that family members had made multiple calls trying to locate him after he left Pennsylvania to drive back to Arkansas without telling his family members he was leaving.  Prior to filing the motion now before the Court, defendants said they learned that Comstock contacted law enforcement authorities about an hour before the accident after she traced Gumby's cell phone and determined he was in the Memphis, Tennessee area.  According to the sheriff deputy's report, Comstock told the  officer she was worried about her father and wanted to make him come home.

Defendants argue that plaintiff failed to comply with the Court's August 20, 2012 Order granting their motion to compel and that the documents recently obtained by defendants demonstrate an intentional

and willful pattern of discovery misconduct on the part of plaintiff and/or her counsel.  Defendants contend plaintiff failed to provide full and accurate responses to discovery by the agreed upon deadline; never produced verified responses to defendants' discovery requests;[1] and failed to produce her Rule 26 expert disclosures by the expert deadline.  They say plaintiff and/or her counsel willfully and intentionally caused severe prejudice to the defendants, making dismissal with prejudice the appropriate sanction.

In support of their motion to dismiss, defendants cite Fed.R.Civ.P. 26(g) and Fed.R.Civ.P. 37.  Rule 26(g) provides, in relevant part:

> **(1) Signature Required; Effect of Signature.** Every disclosure . . . and every discovery request, response or objection must be signed by at least one attorney of record in the attorney's own name . . . By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
> **(A)** with respect to a disclosure, it is complete and correct as of the time it is made; and
> **(B)** with respect to a discovery request, response, or objection, it is:
>> **(I)** consistent with these rules and warranted by existing law . . .
>> **(ii)** not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . .
>> . . .
>
> **(3) Sanction for Improper Certification.**  If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

According to the Advisory Committee,

> Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rule 26 through 37.  In addition, Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions.  The subdivision provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection.  The term "response" includes answers to interrogatories and to requests to admit as well as responses to production requests. . . . .   The duty to make a "reasonable inquiry" is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances.   It is an objective standard similar to the one imposed by Rule 11.  In making the inquiry, the attorney may rely on assertions by the client and on communications with other counsel in the case as long as that reliance is appropriate under

---

[1]Pursuant to Fed.R.Civ.P. 33(b)(5), the party, not an attorney, must verify as to the accuracy of the answers.  Here, plaintiff's attorney signed the verification as Gumby's and Comstock's "power of attorney" and thus became Comstock's agent in responding to discovery.

the circumstances.  Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances. . . . [T]he signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand.

Fed.R.Civ.P. 26 , 1983 Advisory Committee Notes (citations omitted).

  The Advisory Committee Notes go on to state:

Sanctions to deter discovery abuse would be more effective if they were diligently applied 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.' Thus, the premise of Rule 26(g) is that imposing sanctions on attorneys who fail to meet the rule's standards will significantly reduce abuse by imposing disadvantages therefor.
. . .
Rule 26(g) makes explicit the authority judges now have to impose appropriate sanctions and requires them to use it.

Rule 37 also provides for the imposition of sanctions where a party "fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a)."  Fed.R.Civ.P. 37(b)(2)(A).  Sanctions include dismissing the action in whole or in part.  Rule 37(b)(2)(A)(v).  "[D]ismissal with prejudice is an extreme sanction that should be used only in cases of willful disobedience of a court order or where a litigant exhibits a pattern of intentional delay.  This does not mean that the district court must find that the appellant acted in bad faith, but requires 'only that he acted intentionally as opposed to accidentally or involuntarily.'"

*Hunt v. City of Minneapolis, Minn.,* 203 F.3d 524, 527 (8th Cir. 2000).

The Court finds plaintiff's attorney failed to comply with Rule 26(g).  The evidence is clear that plaintiff's attorney failed to investigate her case properly and failed to make a reasonable inquiry to insure that the responses to the discovery demands were complete and correct.  During the June 3, 2013 hearing, plaintiff's counsel admitted that she provided defendants with the names of Gumby's medical providers as she became aware of them.  She was unable, however, to point to efforts she made to locate Gumby's medical records.  In response to UPS's First Set of Interrogatories, plaintiff identified only one doctor and one hospital as having treated Gumby in the ten years prior to the accident.  In February 2012, two of Gumby's brothers testified they had no knowledge of Gumby's health prior to the accident.  Later, during Comstock's

deposition in June 2012, defendants learned that police in Lonoke, Arkansas called Gumby's family after the police detained him during his drive to Pennsylvania.  Plaintiff Comstock testified the police said Gumby looked tired and they advised him not to drive.  Family members from Pennsylvania drove to Arkansas to drive Gumby to Pennsylvania.  Subsequently, in July 2012, plaintiff's counsel produced  documents that contained many more medical providers previously unidentified, and in August 2012, she insisted that she had provided defendants with all the information she had regarding medical providers.

Plaintiff's attorney said Comstock and Gumby's brothers and sisters were unaware of Gumby's physical condition.  Yet, the documents provided to defendants in late November/early December 2012 reveal that family members took Gumby to the emergency room twice while he was in Pennsylvania.  And, as stated previously, some of his family members drove him to Pennsylvania because law enforcement officers in Arkansas believed he should not be driving.  It strains credulity that plaintiff's attorney, plaintiff, and Gumby's other family members had no idea he was in such poor health prior to the accident.  It also is unbelievable that plaintiff's attorney would represent initially that Gumby had only a couple doctors when it turns out he had multitudes of doctors.  It is also noteworthy that the medical evidence belatedly uncovered mostly supports defendants' claim that Gumby's physical and mental health prior to the accident contributed to the accident and his injuries.

In response to defendants' motion to dismiss, plaintiff said defendants "have all the evidence Plaintiff will use at trial, plus some that she will not use."[2]  She also asserts that if she did not include a provider on her list of itemized damages, it should not matter to defendants what the bills from that provider were. Plaintiff's attorney's statements are not unlike her protestation during the August 2012 hearing that plaintiff had given defendants everything on Gumby's damages she contended were proximately caused by the accident. As the Court explained to plaintiff then, defendants are entitled to see Gumby's medical records,

---

[2]ECF No. 200 at 10.

they need plaintiff's assistance in obtaining the records, and plaintiff has a duty to find, request, and produce those documents.[3]

The Court finds plaintiff failed to comply with the rules of discovery and failed to comply with the Court's Order granting defendants' motion to compel in August 2012. Her failure was intentional and has resulted in such extreme prejudice to defendants that dismissal of the case is the only appropriate sanction.

The Court also finds plaintiff violated the Court's Order of August 20, 2012 by failing to provide defendants with the information they requested regarding plaintiff's experts. Even though defendants asked for all the tests done by her experts, plaintiff did not produce, for example, Randy Pazzaglia's tests as he conducted first one and then another. Plaintiff's attorney explained that the way Pazzaglia, an accident reconstructionist, performs his testing, he can only save the final version. Besides, she said, the rules regarding expert disclosures do not require the plaintiff to produce previous tests. But defendants asked for all data Pazzaglia relied on in forming his opinions, and he admittedly relied upon the results of the destroyed testing to support his opinions. The Court finds plaintiff intentionally failed to produce that documentation as ordered by the Court.

### Conclusion

For the reasons stated here and during the hearing on June 6, 2013, the Court finds that defendants' motion to dismiss [ECF No. 171] should be and is hereby granted.

SO ORDERED this 26th day of July, 2013.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[3]ECF No. 172-2 (Transcript of August 20, 2012 Status Conference).

7